IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK06-40433 |
| | ) | |
| ROBERT LEROY McCLELLEN, | ) | CH. 13 |
| | ) | |
| Debtor. | ) | |

## **MEMORANDUM**

Trial was held in North Platte, Nebraska, on February 1, 2007, on Debtor's Objection to Claim of Dale C. Gleason (Fil. #48), and the Resistance by Dale C. Gleason (Fil. #53). Bert E. Blackwell appeared for Debtor, and Timothy P. Brouillette appeared for Dale C. Gleason ("Gleason"). This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

At issue in this case is the amount of damages Gleason is entitled to claim in this bankruptcy case as a result of Debtor's breach of an agreement for occupancy of a house owned by Gleason.

### *Findings of Fact*

1. Debtor filed this Chapter 13 proceeding on April 20, 2006.

2. Gleason filed a timely proof of claim asserting an unsecured claim in the amount of $21,359.00, which claim is broken down as follows:

| | | |
|---|---|---:|
| Replacement cost for heating system | - | $14,403.00 |
| Repairs to premises | - | 2,000.00 |
| Unpaid lease payments for 8 months @ $600.00 per month | - | 4,800.00 |
| Repairs to fireplace brick | - | 156.00 |
| | | $21,359.00 |

3. Gleason is the owner of the real property and improvements located at 316 West 2nd Street, North Platte, Lincoln County, Nebraska ("Property").

4. In December 2002 the parties began discussing a lease with option to purchase whereby Debtor would lease the Property from Gleason for the amount of $600.00, and if Debtor could pay a down payment of $3,500.00 and obtain financing for the balance, he could purchase the Property from Gleason for $62,000.00.

5. Debtor took possession of the Property in December 2002. However, the parties did not memorialize the terms of their agreement in writing. In fact, by the time of trial, the parties

clearly disagreed as to the nature of the relationship, with Gleason referring to it as a month-to-month lease and Debtor referring to the relationship as a purchase agreement.

6. Debtor last made a payment to Gleason in March 2005. By July 2005 Debtor had made contact with a mortgage lender who believed Debtor would be able to qualify for financing to purchase the Property if Debtor performed certain repairs, including continuing the repair and replacement of drywall and installing a concrete driveway at the Property. Another requirement of the proposed lender was that Debtor have a written purchase agreement for the Property. No loan commitment was ever issued.

7. Gleason refused to sign a purchase agreement, but was willing to execute a written lease with option to purchase as long as that document was placed into escrow and not released until the option was exercised.

8. In July 2005 the parties did sign a lease with option to purchase. The lease with purchase option states that it commences on December 1, 2002, and calls for a non-refundable fee in the amount of $2,300.00 due at the time of signing, a monthly lease payment in the amount of $600.24, and a purchase option price as of July 1, 2005, in the amount of $51,816.25.

9. Debtor never did purchase the Property and the lease with option to purchase was never released from escrow. The purchase option expired by its terms on August 1, 2005.

10. By November 2005 Debtor still had not purchased the Property, had not paid rent for several months, and Gleason determined that the Property appeared to be abandoned.

11. On November 23, 2005, Gleason caused his attorney to issue to Debtor a three-day notice of nonpayment of rent for failure to pay rent for the months of May-November 2005. According to the testimony, the rent may have actually been due for April-November 2005. That three-day notice was sent to Debtor at the Property on November 23, 2005. Debtor asserts that he never received the notice.

12. On or about November 30, 2005, Gleason had a locksmith change the locks on the assumption that the Property had been abandoned. At that time, Gleason found that the electricity, gas, and water had all been shut off for nonpayment well prior to that date.

13. A few days after November 30, 2005, Gleason returned to the Property after making efforts to have the utilities turned back on. Upon resumption of the utilities, Gleason discovered that the radiators, pipe, and boiler for the heating system were frozen and cracked. The heating system at the Property was what is known as a water-based "hydronic" heating system using a boiler and radiators. Gleason also discovered that a wall separating two rooms had been removed and that bricks on the face of the fireplace had been partially dismantled.

14. Debtor asserts that he had not abandoned the Property at all. In fact, he was in financial distress as a result of the loss of his job and, with the assistance of friends, he was attempting to make the repairs recommended by his proposed mortgage company. Debtor and Matt Seamann testified that they were periodically working on the drywall and fireplace at the Property in November 2005. They used a wood burning stove for heat when they worked at the Property.

15. Gleason presented evidence that the cost of changing the locks was $65.06.

16. Gleason also presented evidence in the form of a proposal from Snell Services, Inc., that the cost to replace the boiler, radiators, piping, and electrical for the hydronic heating system would be $14,403.00. However, Gleason also testified that he did not cause that work to be performed. Instead, Gleason had the old system removed and installed a forced air system for a total cost of $4,581.60.

17. Gleason also testified that he spent approximately $2,000.00 repairing holes in the floor and rebuilding the wall in the living room, and another $156.00 to have a contractor repair the brick on the fireplace.

18. Through November 2005 Debtor had failed to pay eight months of payments at the rate of $600.00 per month, for a total of $4,800.00.

19. After the locks were changed, Debtor removed his personal property from the Property, although Debtor claims that certain personal property (tools and equipment) was missing. However, the evidence was insufficient as to what tools and equipment, if any, were actually missing, whether Debtor actually owned any such tools and equipment and, further, there was no testimony as to the value of any such tools and equipment. There was testimony that Gleason had withheld a lawnmower belonging to Debtor worth between $300.00 and $400.00.

## *Discussion*

As an initial matter, the parties cannot agree on the nature of their relationship. That is, was the relationship that of landlord and tenant or vendor and vendee? In his brief, Debtor goes to great lengths to try to describe the relationship of the parties as a vendor/vendee relationship. However, based on the evidence, the best description of the relationship is that of landlord and tenant on a month-to-month basis. From December 2002 until July 2005 there was no writing identifying the terms of any agreement to purchase the property and the evidence is far from clear as to the terms of any such right to purchase. In July 2005 an "option" (as opposed to an already existing agreement) to purchase did arise and was signed by both parties. However, Debtor failed to exercise the option in accordance with its terms. In fact, Debtor never tendered performance under any purported option to purchase. So, the option to purchase expired by its own terms and the vendor/vendee relationship never materialized.

The single largest item of damage claimed by Gleason is $14,403.00, representing an estimate of the cost to replace the hydronic heating system. At trial, Debtor took the position that the estimate for damage to the heating system should not be included in the calculation of damages for two reasons. First, Gleason did not cause those repairs to be made. In fact, Gleason installed a forced air system at a much lower cost. Further, Debtor asserts that the freezing (and thus the damage) to the system was caused by Gleason locking Debtor out of the Property, thereby preventing Debtor from keeping the Property heated with the wood burning stove.

The undisputed evidence was that, despite the lack of heat at the Property, the boiler and radiators would not have become frozen and cracked if the liquid inside the system contained the required antifreeze called glycol. Gleason acknowledged that at the time he turned over possession of the Property to Debtor, the glycol was *not* in the heating system because he had removed it when making repairs. Gleason asserts that at the time possession was given, Debtor had stated that he would be willing to put the glycol back into the system. Debtor, on the other hand, denies this. In fact, Debtor claims that Gleason stated he would put the glycol in the system. Unfortunately, no one put the glycol in the system. Gleason wants to be reimbursed for the amount of the estimate for damage to the hydronic heating system, or at least the cost of having to remove that system and installing a forced air system.

There are several reasons why the hydronic heating system froze and cracked. One reason is because the house had no heat. The house had no heat because Debtor failed to pay his utility bills and, therefore, the utilities were shut off. The house did have heat periodically from a wood burning stove that Debtor was utilizing, but Debtor was eventually unable to use the wood burning stove because Gleason changed the locks when the Property appeared to be abandoned. It is difficult to assign "fault" to either party in that situation since Debtor was apparently making some effort to keep the home heated but, based on the condition of the Property and the lack of utilities, Gleason was reasonable in assuming that the Property had been abandoned and changing the locks.

There is, however, another more important reason why the heating system froze. Specifically, there was no glycol or antifreeze in the system. Gleason knew this at the time he turned possession of the Property over to Debtor. Gleason is an employee of Snell Services and is familiar with hydronic heating systems and the need for such systems to be protected from freezing. Even though the testimony was conflicting as to whom was supposed to add the glycol into the system, the bottom line is that Gleason was the one who removed the glycol to make repairs and could have protected the system by adding the glycol himself. Had he done so, the undisputed testimony is that the system would not have frozen and would not be damaged today. Therefore, Gleason is not entitled to recover damages for the cost of repairing the hydronic heating system. Further, since the system would not be damaged if the glycol had been properly added, Gleason is also not entitled to recover the cost of the new forced air system.

Moving on to the other elements of damage, these become easier. Gleason spent $65.06 to have the locks changed when the Property appeared abandoned. He also incurred expenses of approximately $2,000.00 to repair holes that Debtor cut into the floor/ceiling to allow warm air from

the wood burning stove to move from one floor to another, and to repair the wall that Debtor had removed. Gleason had not authorized Debtor to remove the wall or cut the holes. Finally, he spent $156.00 to repair damage to the fireplace that was caused by Debtor. Those expenses are all reasonable and were caused by Debtor. Therefore, Gleason is entitled to a claim for those expenses. Finally, it is undisputed that Debtor had not paid rent to Gleason for a period of eight months as of the end of November 2005, for a total of $4,800.00. All of those amounts are properly part of Gleason's claim.

As far as the rent is concerned, Debtor argued that it is unfair to require him to "forfeit" all of the "rent" payments he had paid when he asserts that such payments, or some part of such payments, should have been applied toward his purchase of the Property. What Debtor fails to recognize is that he did not purchase the Property and never had an enforceable written agreement allowing him to purchase the Property. As indicated previously, the only clear agreement these parties had was that of landlord and tenant for rental of the property for $600.00 per month. The best interpretation of the $600.00 per month payment is that such amounts were for "rent." In fact, even under the lease with purchase option that was placed into escrow (and for which the option was never exercised), the rental payments were specifically to be forfeited in the event Debtor did not buy the Property.

Accordingly, Debtor's objection to claim is granted in part. Gleason is entitled to a claim in the amount of $7,021.06. Gleason is not entitled to any claim for damage or repair to the heating system.

Separate order to be filed.

DATED: March 8, 2007.

BY THE COURT:

 /s/ Thomas L. Saladino 
United States Bankruptcy Judge

Notice given by the Court to:
    *Bert E. Blackwell
    Timothy P. Brouillette
    Kathleen Laughlin
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.